NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DURAPORT REALTY THREE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TRINITY PRODUCTS, INC; et. al.,<br><br>Defendants. | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 12-CV-2305 (DMC)(MF) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Trinity Products, Inc. ("Trinity"), Robert L. Griggs ("Griggs"), and Vincent J. Hasen ("Hasen") (collectively "Defendants") to dismiss Count Five of Plaintiff Duraport Realty Three, LLC's ("Duraport" or "Plaintiff") Complaint, pursuant to FED. R. CIV. P. 9(b). Pursuant to FED. R. CIV. P 78, no oral argument was heard. After considering the submissions of all parties, it is the decision of this Court for the reasons herein expressed that Defendants' motion to dismiss is **granted without prejudice.**

**I.     BACKGROUND**[1]

Duraport has filed an Amended Complaint against Trinity, Griggs ("Griggs") and Hasen (collectively "Defendants"). The five count Amended Complaint alleges breach of contract,

---

[1] The facts from this section are taking from the parties pleadings.

1

quantum meruit, violation of two New Jersey statutes and a fraud claim. The Fifth Cause of Action is captioned "Fraud in the Inducement Against Trinity Products, Inc., Robert L. Griggs and Vincent J. Hasen." Defendant argues that Count V does not sufficiently state a claim for fraud in the inducement as Plaintiff does not allege with particularity the required facts for the elements of such a fraud claim.

Duraport operates a marine and rail terminal on land in Bayonne, New Jersey. Duraport owns approximately 40,000 square feet of land adjacent to the Kill Van Kull Waterway in Bayonne, New Jersey. In November 2011, Duraport alleges that it agreed to utilize its specialized industrial equipment and trained laborers for the unloading, handling, re-loading, delivery and transportation of massive, eighty-ton steel pilings over one hundred feet long, which were manufactured by Trinity in Missouri. After negotiating, Trinity and Duraport entered into a Land Lease Agreement ("the Agreement"), dated December 14, 2011, retroactive to November 17, 2011, the date of the first shipment. (See Ex. A to ECF. No 14.).

Trinity subsequently subcontracted with Conti to manufacture and deliver steel piling to be used. Duraport alleges that although Conti initially considered contracting with Duraport directly, the parties agreed that Trinity would enter into a land lease with Duraport instead. Pursuant to the Agreement, Trinity agreed to pay Duraport $10,000 per calendar month for rental of the yard, commencing on November 17, 2011 through March 31, 2012 (or April 30, 2012 if Trinity exercised an option to extend the lease for one additional month).

Trinity requested Duraport's laborers and machinery be available 24-hours-a-day, 7-days-per-week to receive, unload and handle Trinity's steel pilings with Duraport's specialized, industrial equipment and trained laborers. Trinity and Duraport also agreed that Trinity would be

responsible for Duraport's labor and machinery rates and fees incurred in connection with the unloading, handling, re-handling, delivery, and transportation of the steel pilings manufactured and shipped by Trinity to Duraport's Industrial Yard (the "Handling Fees"), which rates and fees were set forth Schedule B. (Ex. B to ECF. No. 14). After accepting the schedule and handling fees, Duraport prepared detailed invoices setting forth the handling fees incurred by Trinity therefore at the rates and fees set forth in Schedule B.

Duraport's first five invoices, dated December 28 and 29, 2011, in the total amount of $54,346.45 for the work Duraport performed on November 17 and 23, and December 6, 23, and 27, at the agreed-upon handling fees set forth in Schedule B, were paid by Trinity in full on or about February 3, 2012 without objection. (See Ex. C to ECF. No. 14). Duraport's next three invoices, dated January 13, 18, and 23, 2012, in the total amount of $28,721.94, at agreed-upon handling fees set forth in Schedule B, were paid by Trinity in full on February 13 and 29, 2012 without objection. (See Ex. D to ECF. No. 14).

Due to construction concerns, Conti advised Trinity, on or about January 2012, that Trinity needed to accelerate its deliveries and assembly of the steel pilings in order to complete the first phase of the project. Due to the accelerated schedule, Trinity sought to lease an additional one acre parcel of land from Duraport for $10,000 per calendar month. Duraport alleges that Griggs and Hansen, the President and Vice President of Trinity, respectively, represented to Duraport that Trinity had negotiated change orders with Conti that would sufficiently cover the additional costs and fees that would be incurred by Trinity. Despite the initial Schedule B agreement, Duraport agreed to re-negotiate its Agreement with Trinity, and reduce Duraport's applicable handling/processing rates and fees to accommodate the accelerated

schedule.

On February 9, 2012, Trinity and Duraport agreed to revise Schedule B and set forth the additional land rental and handling fees to which Duraport and Trinity agreed to be bound. (See Ex. E to ECF. No. 14). Subsequently, over the course of February 6, 2012 to March 2, 2012, Duraport alleges that on almost a daily basis and at all hours of the day and night, Duraport received, unloaded, handled, re-handled and re-loaded Trinity's materials. Duraport also alleges that perhaps due to the accelerated schedule, Trinity's deliveries were uncoordinated, without staging, sequential or logistical plan. Moreover, Duraport alleges that it had to repeatedly dispatch its employees to retrieve, navigate and guide Trinity's trucks as they continuously got lost on their way from Missouri to New Jersey.

From February 9, 2012 through March 5, 2012, Trinity incurred handling/processing/equipment fees in the total sum of $463,331.63, and a land rental fee for the month of March 2012 in the amount of $10,000. (See Ex. F to ECF. No. 14). On March 8, 2012, Trinity advised Duraport that a progress payment of $58,201.19 was being mailed to Duraport for payment as required by the parties' Agreement. However, later that day, Griggs put a hold on Trinity's payment. (Ex. G to ECF. No. 14). Duraport alleges that Trinity advised Duraport that it had no intention of paying Duraport any of the unpaid handling fees due in the amount of $463,331.63, or March rent in the amount of $10,000. Lastly, Duraport allege that Trinity has refused to make any further payments to Duraport.

Trinity now moves to dismiss the Fifth Count of the Amended Complaint (Fraud in the Inducement against Trinity, Griggs and Hansen) pursuant to FED.R.CIV.P. 9(b) and alleges that the Fifth Count was not pled with particularity.

4

## II.  STANDARD OF REVIEW

For a fraud-based claim, a court may grant a motion to dismiss pursuant to Rule 9(b) if the plaintiff fails to plead with the required particularity. FED. R. CIV. P. 9(b) ("Rule 9(b)"). Plaintiff must satisfy the heightened pleading requirements of Rule 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED.R.CIV.P. 9(b). In other words, plaintiffs asserting fraud claims must specify "'the who, what, when, where and how; the first paragraph of any newspaper story." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir.1990)). The heightened pleading standard gives defendants "notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1418 (3d Cir.1996). Rule 9(b) requires Plaintiff to plead with particularity (1) a specific misrepresentation or omission of material fact (2) the knowledge by Defendants of its falsity (3) ignorance of its falsity by the Plaintiff (4) the intention of Defendants that it should be acted upon and (5) that Plaintiff acted upon it to the detriment of Plaintiff. See Rockefeller Center Properties, Inc. Sec. Litig., 311 F.3d 198, 216 (3d Cir.2002). However, the particularity requirement of Rule 9(b) is "relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." In re Burlington Coat Factory, 114 F.3d at 1418; Key Equity Investors, Inc. v. Sel-Leb Mktg. Inc., No. 04-1675, 2005 WL 3263865 (D.N.J. Nov. 30, 2005) aff'd, 246 F. App'x 780 (3d Cir. 2007).

## III.  DISCUSSION

To establish a claim of common law fraud, a plaintiff must show, and therefore plead,

sufficient facts establishing the following: "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereupon by the other person; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997). Here, the Fifth Cause of Action lacks the particularity required by Rule 9(b) in order to adequately state a claim of fraud.

Duraport alleges under Count Five, that Trinity, Griggs and Hasen induced Duraport to enter into a re-negotiated agreement despite Defendants' knowledge of the false representations made to Duraport. (ECF No. 14 ¶ 84). But as noted above, plaintiffs asserting fraud claims must specify "'the who, what, when, where and how; the first paragraph of any newspaper story." DiLeo at 627. Plaintiffs also have the responsibility of identifying who made the alleged misrepresentation.

In its Opposition to Defendants' Motion to Dismiss, Duraport attempts to clarify its statements with more facts, but this Court is not required to rely on those statements under the 9(b) standard. "A court may not consider matters extraneous to the pleadings without treating the motion as one for summary judgment and giving all parties reasonable opportunity to present materials pertinent to such a motion under Rule 56." Hart v. Elec. Arts, Inc., 740 F. Supp. 2d 658, 662 (D.N.J. 2010).

Duraport's Amended Complaint does not identify who made what alleged misrepresentation to whom or when, where or the method of communication by which the alleged representation was made. (Def's. Opp. Br. at 4). Further, this Court finds that Plaintiff's fifth cause of action contains only conclusory allegations that Duraport relied on the statements

but provides no specific factual allegations to support such statement.  Id.

### IV.   CONCLUSION

Accordingly, this Court finds that Plaintiff failed to adequately plead the fifth cause of action with particularity and Defendants' motion to dismiss is **granted without prejudice**. Plaintiff is granted leave to file an amended complaint.

S/ Dennis M. Cavanaugh<br>
Dennis M. Cavanaugh, U.S.D.J.

| | |
|---|---|
| Date: | February 28, 2013 |
| Original: | Clerk's Office |
| cc: | Hon. Mark Falk, U.S.M.J. |
| | All Counsel of Record |
| | File |